IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BETTY C. LIBNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 08 C 4315 |
| v. ) | |
| ) | Magistrate Judge |
| MICHAEL J. ASTRUE, ) | Maria Valdez |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

# MEMORANDUM OPINION AND ORDER

This is an action brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying plaintiff Betty Libner's claim for Supplemental Security Income Benefits under Title XVI of the Social Security Act. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Libner's Motion for Summary Judgment [Doc. No. 23] is granted in part and denied in part.

# PROCEDURAL HISTORY

On December 23, 2003, Libner filed an application for Social Security Disability Insurance alleging disability beginning August 1, 2003. (R. 76.) The claim was denied initially and again upon reconsideration on November 9, 2004. (R. 16.) Libner timely appealed those denials, and on June 15, 2007, a hearing before Administrative Law Judge ("ALJ") David W. Thompson was held, at which Libner

was represented by an attorney. (R. 629.) On July 5, 2007, the ALJ denied Libner's claim. (R. 20-22.) The Appeals Council denied review on July 15, 2008, making the ALJ's decision the final decision of the Commissioner under 20 C.F.R. § 404.955. (R. 5-8, 12.) On July 30, 2008, Libner initiated this civil action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## FACTUAL BACKGROUND

I. **BACKGROUND**

Libner was born on December 15, 1956 and was 50 years old at the time of the hearing. (R. 634.) She is five feet two inches tall and weighed 107 pounds. (*Id.*) Libner completed the eleventh grade and tried to obtain a GED but did not pass the exam. (R. 637.)

Libner's past relevant work includes working as a laborer and eventually a bookkeeper at a recycling plant from 1990 to 1998, where she accepted, weighed and sometimes cleaned materials, paid persons who brought recyclable goods in, logged the materials that come into the facility, and eventually handled payroll duties under the direction of the head bookkeeper. (R. 131-33, 655-56.) Libner then worked for Open Door Rehabilitation until 2000 as a rehabilitation aid, assisting mentally handicapped individuals. (R. 131-33, 656.) Her last day of insured status was June 30, 2005. (R. 67.)

She claims disability beginning August 1, 2003 due to blisters and lesions on her hands from chronic porphyria cutanea tarda ("PCT"), Hepatitis C, and shoulder pain. (R. 19.)

2

## II. TESTIMONY AND MEDICAL EVIDENCE

### A. <u>Libner's Testimony</u>

Libner is married and has three children, one of whom lives with her and her husband in their mobile home. (R. 634-35.) She quit working on January 1, 2000 due to complications from a hysterectomy. (R. 637-38.) Libner is currently taking Xanax, Sucralfate, Ambien, Lyrica, Protonix, Anafranil, Vicropose and Ibuprofin. (R. 639-41.) This combination "helps the pain a lot" in Libner's shoulder but has the side effects of making her tired and dizzy. (R. 641.) Libner stated she is unable to work because she has stomach problems and vomits frequently. (*Id.*) She also testified that she has trouble breathing, has a poor memory, cannot sit or stand for longer than fifteen to twenty minutes without having to alternate sitting or standing, and cannot go longer than half an hour without lying down. (R. 641-45.)

Libner stated that she gets winded after walking half a block, needs to use both hands to lift a gallon of milk, and uses a counter to help pour a glass. (R. 645, 653.) She is able to bend over and pick up objects and can open and close doors in her house, although she has difficulty opening car doors. (R. 646-47.) She is not supposed to be in the sun, but she likes to venture outdoors to sit on a shaded swing. (R. 647, 655.) Libner is able to bathe, dress and feed herself. (R. 647.) She can wash dishes and dust around the home but can perform little cooking and can only make half the bed at one time. (R. 649-50.) Libner testified that she is usually in bed from 11:00 p.m. to 7:30 a.m., stands for two to two and a half hours and sits approximately one and a half hours each day, while the rest of her time is spent lying down. (R. 650-51.) Libner stated that she was able to lift objects weighing as

3

much as fifty pounds at her recycling plant position but is now unable to lift even a ten-pound sack of potatoes. (R. 656, 654.) Because of shoulder pain, she sometimes has her daughter help her put on a shirt. (R. 663.) However, she is able to write without difficulty. (R. 662.) Libner testified that her hands get swollen in the morning, and she has considerable tingling in her right arm. (R. 662-63.) Moreover, she vomits in the morning and it takes approximately three hours before she feels better. (R. 663.)

### B. <u>Medical Evidence</u>

Libner developed lesions on her hands with itching and burning sometime before September 22, 2003. (R. 223.) At that time, her doctors, Martin Brauweiler and Janell Hupp, referred her to Dr. Fred Kemp, a dermatologist. (*Id*.) Libner was hospitalized from October 26 to November 1, 2003 for acute left pneumorothorax, PCT and chronic abdominal pain. (*Id*.) She was subsequently given phlebotomy treatments over the course of two weeks. However, she developed irritation from the portal placement and was admitted to the emergency room for severe pain under her left breast on December 6, 2003. (R. 219.)

On March 3, 2004, Libner began to receive treatment from Dr. David Faulk, a gastroenterologist who specializes in liver diseases. Faulk's notes indicate Libner received phlebotomies once every two weeks from November 24, 2003 until April 1, 2004, and had additional phlebotomies on September 20, 2004 and October 28, 2004. (R. 330.) A March 23, 2004 consultation note from Dr. Faulk states that the treatments helped Libner's blisters but worsened her fatigue and shortness of

4

breath. (R. 325.) Moreover, Libner had lost fifteen pounds within the year, had left-side chest pain, weakness, muscle wasting, sleep disturbances, a bronzed appearance, tenderness in her right lower quadrant and multiple lesions on her hands and arms. (*Id*.) During an April 2004 examination by Dr. Faulk, Libner complained of fatigue, mood swings, hot flashes, sleep disturbances, left side chest pain and a feeling of pins and needles in her left arm, as well as tenderness around her phlebotomy portal site and feeling depressed and anxious. (R. 324.) She appeared ill, bronzed, had nodules and excoriations on her hands, and a muscular examination indicated diffuse weakness, decreased mass, and number 1 wasting. (*Id*.)

On October 26, 2003, Dr. Hupp noted Libner had HCV and a hiatal hernia with gastroesophageal reflux disease. (R. 173.) In a letter dated May 14, 2004, Dr. Faulk stated Libner had serological evidence of HCV. (R. 323.) On June 24, 2004, Dr. Faulk noted that Libner was tired and had left side chest pain, along with nausea and occasional vomiting. (R. 318.) On August 12, 2004, Libner was seen by Dr. Theresa Grant, a specialist in internal medicine. (R. 312-22.) Dr. Grant noted that Libner had HCV and a high viral load of over one million. (R. 322.) Dr. Grant also noted a possible diagnosis of depression or anxiety. (*Id*.)

A liver biopsy performed on September 16, 2004 showed slight lobular Hepatitus and mild portal triaditis. (R. 306-07.) On October 21, 2004, Dr. Faulk noted that Libner weighed 104 pounds, her energy level was poor to very poor, and her appetite was poor to fair. (R. 316.) On November 30, 2004, Dr. Faulk noted that

5

Libner was not eating, her weight was down to 102 and she had diffuse muscle wasting, insomnia and bilateral back pain. (R. 491.)

On January 6, 2005, Libner was on her second week of Interferon treatment when she experienced headaches, anorexia, extreme fatigue, nausea, vomiting, upper abdominal pain, a rash on her arm, and crying spells. (R. 488.) On February 9, 2005, she complained of no appetite, nausea, headaches, shortness of breath, extreme fatigue, and decreased memory. (R. 486.) Moreover, she had right shoulder and breast pain, and her weight was down to 97 pounds. (*Id*.) On February 12, 2005, Dr. Grant determined Libner had severe symptomatic anemia secondary to the Interferon and Ribavirin treatment and needed two units of transfusions. (R. 549.)

On February 28, 2005, Dr. Faulk noted that he would reduce Libner's Ribavirin treatment and possibly her Interferon treatment due to her side effects. (R. 484.) On March 14, 2005, Dr. Faulk reduced the dosage of Ribaviron and noted that Libner showed improvement, was not depressed, and all of her symptoms and side effects had resolved except her right shoulder pain. (R. 483.) On April 28, 2005, Libner had sores developed from scratching, shortness of breath, back pain, headaches, and weighed only 88 pounds, but had improved energy and appetite. (R. 481.) On June 6, 2005, Dr. Faulk noted Libner weighed 91 pounds and had HCV, but there was no detectable virus. (R. 480.) However, a November 9, 2005 exam detected HCV. (R. 566-67.) On December 8, 2005, Dr. Faulk noted that Libner's weight had increased to 100 pounds and many of her chronic complaints had

6

improved, but she had intermittent nausea, her appetite was poor, her memory had declined, and she appeared frail, thin, depressed, and anxious. (R. 479.) On March 30, 2006, Dr. Faulk noted that Libner weighed 98 pounds, complained of depression and suicidal thoughts, experienced recent vomiting and diarrhea with cramping for several weeks prior, and appeared ill, cachectic, and pale, with sunken eyes and bronzed skin. (R. 478.) Dr. Faulk's impression was PCT, HVC, and depression. (*Id.*) On December 12, 2006, Dr. Faulk noted that Libner's weight had risen to 106 pounds and her muscle tone was normal, but she appeared ill, sallow, and was anxious. (R. 476.) The record also contains reports made by agency physicians, one noting that Libner could lift ten pounds and walk fifty feet, (R. 19, 303), and another concluding that Libner was capable of performing medium work, (R. 20, 357.)

### C. **Vocational Expert's Testimony**

A Vocational Expert ("VE"), Edward Pagella, testified at the hearing. In response to the ALJ's questioning, the VE concluded that an individual with the same age, education, and work experience as Libner, whose only restriction would be that she would be limited to light work,[1] would still be able to perform her former work as a rehabilitation aid. (R. 665-66.) The ALJ then asked about an individual who would have the additional limitation of only being able to perform simple, routine tasks. (R. 666.) The VE responded that Libner would not be able to perform

---

[1] The VE defined an occupation at the "light level" as one where a worker could lift 20 pounds occasionally, up to ten pounds frequently, and stand up for six out of eight hours in a workday (R. 669.)

7

her past relevant work but could perform 1,800 sorter, 4,800 assembler, and 3,600 packer positions in the south Chicago metropolitan region. (*Id*.)

The ALJ then limited the hypothetical to sedentary work with the option to sit or stand. (*Id*.) The VE replied that Libner would not be able to do her past work but could perform 6,800 cashier, 3,200 bench assembler and 2,800 bench packager positions. (R. 667.) Finally, the ALJ asked about a person who would be less than 80% productive during the work day, and the VE answered that there was no substantial gainful activity available for such a person. (*Id*.)

### D. ALJ Decision

The ALJ found that Libner had not engaged in substantial gainful activity since the alleged onset date of August 1, 2003, and concluded that Libner suffered from a severe combination of impairments resulting from Hepatitis C, PCT, degenerative disc disease, and an adjustment disorder. (R. 18.) However, the ALJ found that Libner did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. § 404 Subpart P, Appendix 1 (20 C.F.R § 404.1520 (d), 20 C.F.R. § 404.1525, 20 C.F.R. § 404.1526).

The ALJ determined that, although Libner had Hepatitis C and suffered from severe side effects of treatment, her symptoms had "resolved upon completion of treatment." (R. 20.) The ALJ also determined that Libner underwent phlebotomy treatments from until April 2004 for her PCT and that the record indicated she did not require any further treatments. (R. 19.)

With regard to Libner's complaints of disabling shoulder pain, the ALJ maintained that her condition improved with nerve injections, which decreased her pain complaints 75% and gave her "marked improvement" in cervical range of motion in all planes. (R. 19-20.) The ALJ found no "significant limitations in the claimant's ability to perform daily activities, function socially or concentrate" and "no evidence of episodes of deterioration or decompensation of extended duration." (*Id.*) The ALJ also concluded that Libner had "poor" credibility regarding her testimony of her physical limitations because she stated at the hearing that she could only sit for fifteen to twenty minutes at one time without standing, but the hearing lasted sixty-eight minutes, during which she "never stood up or appeared in any distress." (R. 20.) Having determined that Libner retained the residual functional capacity ("RFC") to perform a full range of light work, the ALJ ultimately concluded that Libner was not disabled as defined in the Social Security Act. (*Id.*)

## DISCUSSION

I. **ALJ LEGAL STANDARD**

A person is disabled within the meaning of the Social Security Act if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). To determine if a claimant is disabled, the ALJ considers five questions in order: (1) Is the claimant presently employed? (2) Does the claimant have a severe impairment? (3) Does the

9

impairment meet or medically equal one the specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Id the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.,* 957 F.2d 386, 389 (7th Cir. 2002). A negative answer at any step, other than step 3, precludes a finding of disability. *Id.* The claimant has the burden of proof at steps 1-4. *Id.* If the claimant upholds this burden, the burden shifts to the Commissioner to show the claimant is able to perform other work existing in significant numbers in the economy. *Id.*

## II. JUDICIAL REVIEW

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by "substantial evidence," *see* 42 U.S.C. § 405(g), which means "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence must be more than a scintilla but may be less than a preponderance. *Id.* This Court may not substitute its judgment for the ALJ's by reevaluating facts, reconsidering evidence or making credibility determinations. *Id.*

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an

accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). An ALJ may not "select and discuss only evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In other words, "an ALJ has a duty to fully develop the record before drawing his conclusions, and must adequately articulate his analysis so that we can follow his reasoning." *Murphy v. Astrue*, 498 F.3d 630, 634 (7th Cir. 2007).

## III. ANALYSIS

Libner argues that the ALJ's decision was flawed because it included an improper credibility finding, and the ALJ did not correctly weigh the medical evidence supporting disability.

### A. <u>Credibility</u>

Libner argues that the ALJ improperly engaged in "sit and squirm jurisprudence" by finding Libner's testimony incredible based on his observations of her comfort level during the administrative hearing. An ALJ's credibility determination is granted substantial deference by a reviewing court unless it is "patently wrong" and not supported by the record. *See Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007); *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000); *see also Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quoting *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006)) ("'Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed.'"). However, an ALJ must give specific

11

reasons for discrediting a claimant's testimony, and "[t]hose reasons must be supported by record evidence and must be 'sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Lopez* ex rel. *Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003) (quoting *Zurawski*, 245 F.3d at 887-88).

The parties agree that when an individual attends the administrative proceeding, the adjudicator may consider his own observations of the person; however, "the adjudicator is not free to accept or reject the individual's complaints *solely* on the basis of such personal observations, but should consider any personal observations in the overall evaluation of the credibility of the individual's statements."[2] SSR 96-7p (emphasis added); *see also Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (upholding credibility finding based on observed comfort level when the observation was "one of several factors that contributed to the hearing officer's credibility determination"). The parties disagree about whether the ALJ's in-hearing observations were the sole basis of his credibility determination.

The Commissioner engages in a *post hoc* analysis, concluding that the ALJ's credibility finding was based on the medical evidence in the case as well as his own observations. But the only basis for the credibility finding given in the decision was the "gross discrepancy" between Libner's statement that she could only sit for fifteen to twenty minutes without standing up and the fact that she sat through the

---

[2] Interpretive rules, such as Social Security Regulations ("SSR"), do not have force of law but are binding on all components of the Agency. 20 C.F.R. § 402.35(b)(1); *accord Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999).

12

sixty-eight minute hearing and "never stood up or appeared in any distress." (R. 20.) The ALJ's observation was not one of several factors relevant to his credibility finding; to the contrary, the decision indicates that his observation was the only factor considered, which is not allowed under the regulations. The case therefore must be remanded for a more complete credibility analysis.

### B. <u>Medical Evidence</u>

Libner next contends that the ALJ did not properly balance the medical evidence in the record, and his failure to understand her impairments led to an incorrect RFC determination. Alternatively, Libner contends that the failure to correctly analyze the medical evidence would show that her non-exertional limitations would lead her to be unproductive for more than 20% of each workday. The VE testified at the hearing that no substantial gainful activity existed for an individual who was not able to maintain at least 80% productivity. (R. 667.)

The ALJ's decision rests on his finding that Libner's disabling symptoms, including fatigue, abdominal pain, skin eruptions, dizziness, shortness of breath, and headaches, had completely resolved after she stopped HCV treatment, as noted in her March 14, 2005 treatment notes. However, treatment notes after March 14 reporting the return or continuation of a number of her symptoms, including skin lesions, memory difficulties, depression, weight loss, nausea, and shortness of breath, were not even mentioned in the ALJ's decision. The Court therefore has no way to determine why this medical evidence was disregarded or to follow the logical bridge between the evidence and the ALJ's ultimate finding. While the Court is not prepared to conclude that any of these symptoms would lead to a finding of

13

disability or would preclude her from being productive at least 80% of a workday, the ALJ should have considered the evidence in the record supporting Libner's claim that she continued to suffer disabling symptoms after March 14, 2005. The Court therefore remand this issue to the agency to determine whether Libner suffered symptoms that were disabling or would limit her from performing the full range of light work.

## CONCLUSION

For the foregoing reasons, Libner's Motion for Summary Judgment [Doc. No. 23] is denied in part to the extent it seeks a reversal of the Commissioner's decision denying benefits. The motion is granted in part to the extent it asks that the case be remanded to the Commissioner for proceedings consistent with this opinion.

**SO ORDERED.**               **ENTERED:**

*[signature: Maria Valdez]*

**DATE:  August 3, 2011**          _____
                                   **HON. MARIA VALDEZ**
                                   **United States Magistrate Judge**